1 | Jay D. Ellwanger (CA Bar No. 217747)
2 | jellwanger@equalrights.law
**ELLWANGER LAW LLLP**
3 | 8310-1 N. Capital of Texas Highway, Ste. 190
Austin, Texas 78731
4 | (737) 808-2260
(737) 808-2262 (fax)
5 | Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESMÉ BIANCO,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN WARNER a/k/a MARILYN MANSON, individually, MARILYN MANSON RECORDS, INC.,<br><br>    Defendant. | **Case No. 2:21−cv−03677 FLA (MARx)**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BRIAN WARNER a/k/a MARILYN MANSON'S MOTION TO DISMISS**<br><br>**(JURY TRIAL DEMANDED)** |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL STATEMENT ........................................................................................... 2

III. LEGAL STANDARD .................................................................................................. 5

IV. ARGUMENT ................................................................................................................ 6

   A. California's Code of Civil Procedure Section 340.16 Ten-Year Statute of Limitations Applies ............................................................................................................................ 6

   B. Plaintiff's Claims Are Timely Even Under the Two-Year Statute of Limitations ............ 8

   C. Even in Plaintiff's Claims are Untimely, Defendant is Estopped From Asserting a Statute of Limitations Defense ............................................................................................. 9

V. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

### CASES

*Asarco, LLC v. Union Pac. R.R. Co.*,
  765 F.3d 999 (9th Cir. 2014), *as corrected* (Aug. 27, 2014) .................................. 5

*Ateeq v Najor*
  (1993) 15 Cal.App.4th 1351 ............................................................... 10, 11, 12

*Christopher P. v. Mojave Unified School Dist.*
  (1993) 19 Cal.App.4th 165 Cal.Rptr.2d 353 .................................................... 12

*Conerly v. Westinghouse Elec. Corp.*,
  628 F.2d 117 (9th Cir. 1980) ............................................................................. 5

*Daley v. Regents of Univ. of Calif.* (2019)
  39 Cal. App.5th 595 .......................................................................................... 8

*De Oliveira v. U.S. I.N.S.*,
  873 F. Supp. 338 (C.D. Cal. 1994) .................................................................... 6

*Doe v. Bakersfield City School Dist.*
  (2006) 136 Cal.App.4th 556 ...................................................................... 10, 11

*Driscoll v City of Los Angeles,*
  (1967) 67 Cal. 2d 297 ........................................................................................ 9

*Garcia v. Welltower OpCo Group, LLC,*
  2021 WL 492581 (C.D. Feb. 2021) ................................................................... 5

*Groom v. City of El Paso De Robles,*
  2020 WL 5947822 (C.D. Cal. 2020) ................................................................ 11

*In re First T.D. & Inv., Inc.,*
  253 F.3d 520 (9th Cir. 2001) ............................................................................. 6

*John R. v. Oakland Unified Sch. Dist.*
  (1989) 48 Cal.3d 438 ......................................................................................... 9

*Lantzy v. Centex Homes*
  (2003) 31 Cal.4th 363 ........................................................................................ 9

*NBCUniversal Media, LLC v. Superior Court,*
  (2014) 225 Cal. App.4th 1222 ........................................................................... 8

*Ortega v. Pajaro Valley Unified School Dist.*
  (1998) 64 Cal.App.4th 1023, 75 Cal.Rptr.2d 777, as modified on denial of
  reh'g (July 10, 1998) ....................................................................................... 12

*Raya v. Barka*,
  2021 WL 2254975 (S.D. Cal. June 3, 2021) ..................................................... 5

*Shaffer v. Debbas*
    (1993) 17 Cal.App.4th 33 ......................................................................................... 9

*Transwestern Pipeline Co., LLC, v. 17.19 Acres of Prop. Located in Maricopa Cty.*,
    627 F.3d 1268 (9th Cir. 2010) .................................................................................. 6

*Troester v. Starbucks Corp.*,
    2020 WL 553572 (C.D. Cal. Jan. 2020) ................................................................... 6

*Vu v Prudential Property and Casualty Ins. Co.*
    (2001) 26 Cal.4th 1142 ............................................................................................. 9

*Wind Dancer Production Group v. Walt Disney Pictures*
    (2017) 10 Cal.App.5th 56 ......................................................................................... 9

**STATUTES**

CAL. CODE CIV. PROC. § 340.16 ............................................................................. 6, 7, 12

CAL. CODE CIV. PROC. § 350 ............................................................................................ 6

**OTHER AUTHORITIES**

5B Charles Alan Wright et al., *Federal Practice and Procedure*
    § 1357 (3d ed. 1998) ................................................................................................. 5

Plaintiff ESMÉ BIANCO; ("Ms. Bianco" or "Plaintiff"), by and through her attorneys, brings this response in opposition to the Motion to Dismiss filed by Defendant BRIAN WARNER a/k/a MARILYN MANSON, individually ("Mr. Warner" or "Defendant") (Dkt. No. 14) ("Def.'s Mot."). In support thereof, Plaintiff submits the following:

## I.     INTRODUCTION

Defendant's motion should be denied as Plaintiff's claims are timely pursuant to the very terms of the statute applicable to her claims. Defendant completely ignores the explicit terms of §340.16 that unequivocally state that it applies to any action "that is commenced on or after January 1, 2019." Indeed, Defendant goes so far as to argue that there is no "express language" in the statute that would make it apply to Plaintiff's claims despite the very clear language that it does. This argument flies in the face of the words of the statute which could not be more explicit. Plaintiff's claims are timely because they were commenced "on or after January 1, 2019" and therefore, the ten-year statute of limitations applies to her claims.

Furthermore, Defendant is estopped from pursing any argument that Plaintiff's claims are untimely due to his actions of violence and abuse against Plaintiff. Defendant threatened Plaintiff for years; to kill her, to have her visa revoked, and to destroy her career. While Defendant was threatening Plaintiff, he was also physically, mentally, and emotionally abusing Plaintiff by cutting her during sexual intercourse without her consent, tying her up without her consent, chasing her with an axe, and failing to provide her with food. Despite Defendant's blanket denial of these allegations, at the Motion to Dismiss stage of litigation, they each must be taken as true.

Plaintiff's claims are timely pursuant to statute and Defendant is estopped from pursuing a statute of limitations defense by his egregious actions toward Plaintiff. Defendant therefore has no valid argument that Plaintiff's claims are untimely, and Defendant's Motion should be dismissed.

1

## II. FACTUAL STATEMENT

Plaintiff was first introduced to Defendant by Defendant's then-fiancée in 2005.[1] After Defendant's divorce in 2007, he made his first sexual overtures towards Plaintiff, asking for nude photographs of Plaintiff and then playing the request off as a joke.[2] Thereafter in 2009, Defendant flew Plaintiff to Los Angeles for the first time, allegedly to film a music video for one of Defendant's songs.[3] Despite understanding this to be a professional project, Plaintiff arrived to find no film or audio crew present.[4] Plaintiff discovered she was expected to stay at Defendant's home rather than a previously-booked hotel.[5] Forced to be "on-call" 24/7, Plaintiff was subject to sleep deprivation, forced to wear lingerie, and deprived of food.[6] Rather than provide food and security for Plaintiff, Defendant supplied Plaintiff with drugs and alcohol.[7]

In addition to denial of necessities, Defendant made Plaintiff the target of his violent anger.[8] Defendant physically beat Plaintiff, he forced Plaintiff to watch an extremely violent movie that caused Plaintiff to faint, and attempted to force Plaintiff to engage in sexual acts on camera with another woman.[9] In addition, Plaintiff repeatedly threatened to come to Plaintiff's bedroom in the middle of the night and rape her.[10] In yet another episode, Defendant tortured Plaintiff by locking

---

[1] *See* Plaintiffs First Amended Complaint, Document 15, filed on 7/9/21 (hereinafter "Dkt. 12") at ¶ 12.
[2] Dkt. 12 at ¶13.
[3] Dkt 12 at ¶ 14.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Dkt. 12 at ¶ 15
[9] *Id.*
[10] *Id.*

2

the bedroom door, tying Plaintiff to a prayer kneeler, and beat her with a whip.[11] Defendant also electrocuted Plaintiff.[12]

In May 2009, Defendant visited Plaintiff in London.[13] What began as a consensual sexual relationship became one regularly marked by nonconsensual physical contact.[14] For example, Defendant bruised and bit Plaintiff, publicly groped Plaintiff without her consent, and verbally degraded her during interviews.[15]

Nearly two years later, in April 2011, Defendant convinced Plaintiff to move to Los Angeles and live with him.[16] Defendant offered to use his status in the entertainment industry to help Plaintiff launch her career in the United States.[17] Further, Defendant provided critical, necessary assistance to Plaintiff in securing her United States visa.[18] Over her two-and-a-half months of living with Defendant, Plaintiff endured constant abuse at his hands.[19] Defendant controlled Plaintiff's movements, repeatedly threatening to interfere in Plaintiff's visa process if she ever disobeyed him.[20] Defendant kept Plaintiff awake for days on end and locked her out of the apartment overnight.[21] In an apparent attempt to isolate Plaintiff and exact greater control over her, Plaintiff was not permitted to leave the apartment without permission, nor was she allowed to receive visitors.[22]

---

[11] *Id.*
[12] *Id.*
[13] Dkt. 12 at ¶ 18.
[14] *Id.*
[15] *Id.*
[16] Dkt. 12 at ¶ 20
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

3

In addition to these abuses, Defendant kept the apartment in near-total darkness and cold temperatures.[23] Defendant often berated Plaintiff if he did not like her outfit, if Plaintiff attempted to open the curtains to the apartment, if she expressed discomfort with the sexually graphic films Defendant played, or if Plaintiff failed to find objects Defendant Warner hid around the apartment.[24] Again, Plaintiff was the target of Defendant's violent rage; frequently, Defendant would become so enraged he would begin violently throwing objects around the apartment.[25] In one episode of this rage, Defendant chased Plaintiff around the apartment with an axe.[26] On yet another instance, Defendant cut Plaintiff with a Nazi knife during sex, without her consent, and then took pictures of the cuts on Plaintiff's body.[27] To further demean Plaintiff, Defendant posted the photographed cuts online without Plaintiff's consent.[28]

Plaintiff feared for her safety and her professional career if she ever protested her treatment by Defendant.[29] Professionally, Plaintiff feared that failing to abide by Defendant's twisted demands would be seen as unprofessional, and Defendant would use his status in the entertainment industry to blacklist Plaintiff from future opportunities.[30] When Plaintiff finally escaped Defendant's apartment in June 2011, Defendant threatened to punish her and threatened to have Plaintiff's visa revoked.[31] When Plaintiff and Defendant came into contact after one of Defendant Warner's shows in 2013, he forcibly kissed Plaintiff without her consent and attempted to block her from leaving.[32]

---

[23] Dkt. 12 at ¶ 21.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] Dkt. 12 at ¶ 16.
[30] *Id.*
[31] Dkt. 12 at ¶ 22.
[32] Dkt. 12 at ¶ 23.

It took Plaintiff years to understand the scope of the physical, emotional, and psychological torment caused by her relationship with Defendant.[33] The lasting effects of Defendant's torture are still felt by Plaintiff to this day, as she deals with complex Post-Traumatic Stress Disorder, anxiety, depression, and panic attacks.[34]

### III.     LEGAL STANDARD

Dismissal based on an affirmative defense is only proper if there is an "obvious bar to securing relief on the face on the complaint." *Asarco, LLC v. Union Pac. R.R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014), *as corrected* (Aug. 27, 2014); *see also Raya v. Barka*, 2021 WL 2254975, at *5 (S.D. Cal. June 3, 2021) (denying defendant's motion regarding the statute of limitations because it "was not apparent from the face of the complaint" that the claim was untimely) (quoting *Conerly v. Westinghouse Elec. Corp.*, 628 F.2d 117, 119 (9th Cir. 1980)); *Garcia v. Welltower OpCo Group, LLC,* 2021 WL 492581 at *10 (C.D. Feb. 2021) (stating that it is only when the plaintiff "admits all the ingredients of an impenetrable defense" that plaintiff's claims should be dismissed). If an asserted defense raises any issues of disputed fact, dismissal is improper. *Asarco,* 765 F.3d at 1004. Therefore, dismissal "is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief." *Id.* (citing 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1357 (3d ed. 1998).

---

[33] Dkt. 12 at ¶ 24.
[34] *Id.*

5

## IV. ARGUMENT

### A. California's Code of Civil Procedure Section 340.16 Ten-Year Statute of Limitations Applies

Defendant claims that the newly-enacted statute titled "Action for damages suffered as result of sexual assault that occurred on or after plaintiff's 18th birthday" does not apply to Plaintiff's claims because the statute "contains no express language" that it applies to actions before it was enacted on January 1, 2021. CAL. CODE CIV. PROC. § 340.16; Def's Mot. at p. 5. Defendant's argument runs contrary to the express language of the statute.

The newly enacted statute includes the "express language" that it "applies to any action described in this subdivision (a) that is **commenced on or after January 1, 2019**." CAL. CODE CIV. PROC. § 340.16 (emphasis added). California has previously codified that the term "commenced" is defined as when the complaint is filed. "An action is commenced, within the meaning of this Title, when the complaint is filed." CAL. CODE CIV. PROC. § 350. The only rational interpretation of § 340.16 is that it applies to any action where the complaint is filed on or after January 1, 2019.

In interpreting California statutes, federal courts follow California's principles of statutory construction. *In re First T.D. & Inv., Inc.,* 253 F.3d 520, 527 (9th Cir. 2001). Courts first turn to the "plain language of the statute" giving the language its "usual, ordinary import." *Troester v. Starbucks Corp.,* 2020 WL 553572 at *4 (C.D. Cal. Jan. 2020). "If the plain meaning of the statute is unambiguous, that meaning is controlling, and we need not examine legislative history." *Transwestern Pipeline Co., LLC, v. 17.19 Acres of Prop. Located in Maricopa Cty.,* 627 F.3d 1268, 1271 (9th Cir. 2010). The rules of statutory construction require the courts to "apply the plain meaning rule to the statutory language." *De Oliveira v. U.S. I.N.S.,* 873 F. Supp. 338, 340 (C.D. Cal. 1994).

By the unequivocal chosen words of the statute, Plaintiff's claims are timely because they were commenced on April 30, 2021, which is "on or after January 1, 2019." CAL. CODE CIV. PROC.

§ 340.16; Dkt. No. 1. The plain language of the statute is unambiguous and controlling. It states that it applies to all actions commenced after January 1, 2019, and commenced has previously been defined, and is well understood to mean, when the complaint is filed. Therefore, the ten-year statute of limitations applies.

Nevertheless, even assuming the legislative history is relevant, it too leads only to the conclusion that §340.16 applies to all actions where the complaint is filed after January 1, 2019. The purpose of the bill was to codify the fact that a two-year statute of limitations was inappropriate for survivors of sexual assault. The author of the bill provided that "the current two-year statute of limitations simply does not provide sexual assault survivors adequate time to heal from the physical and emotional trauma of a sexual assault and prepare for a civil case." Dkt. 14-3 at p. 7. As pointed out by Defendant, §340.16 did indeed include a "sweeping" retroactivity provision, that would include every action "so long as there has not been a final adjudication on the merits before January 1, 2019." (Def's Mot. at p. 5; Dkt. 14-3 at p. 14). In giving "final adjudication" the broadest possible definition, the bill clarified that "termination of a prior action on the basis of the statute of limitations does not constitute a final adjudication on the merits." (Dkt. No. 14-3). Therefore, the "sweeping" retroactivity provision could potentially revive every live action that had been dismissed on statute of limitations grounds, including those prior to January 1, 2019.

Recognizing the potential cost to the courts and the unknown burden on the courts, the statute omitted this specific language as to claims that did not have a final adjudication prior to January 1, 2019. Defendant misinterprets the "affirmative[ly] removal" of this language as somehow foreclosing Plaintiff's claims. Def's Mot. at p.6. Indeed, Defendant does not once even acknowledge that the statute <u>retained the explicit language that it applies to all actions commenced after January 1, 2019</u>, nor does Defendant even offer an explanation as to why that language

remains. Defendant offers no argument because none exists. Defendant has failed to prove it is apparent on the face of Plaintiff's complaints that her claims are untimely.

### B. Plaintiff's Claims Are Timely Even Under the Two-Year Statute of Limitations

Even assuming that Plaintiff's claims are held to the two-year statute of limitations under § 335.1, Defendant has still failed to sufficiently prove that Plaintiff's claims are untimely on the face of the Complaint. Plaintiff did not recognize the true extent of her psychological injuries, nor that the actions committed by Defendant constituted sexual assault and sexual battery, until meeting with other victims and speaking about her abuse in 2020. Therefore, Plaintiff's claims did not accrue until this time pursuant to the discovery rule.

A plaintiff's "inability to discover a cause of action may occur 'when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand.'" *NBCUniversal Media, LLC v. Superior Court,* (2014) 225 Cal. App.4th 1222, 1233. The discovery rule applies to battery claims. *Daley v. Regents of Univ. of Calif.* (2019) 39 Cal. App.5th 595, 606 (finding that the discovery rule applies to §335.1). Indeed, the new ten-year statute of limitations was enacted in recognition that many plaintiffs are not able to process the extent of their abuse in the two years. Indeed, one of the sponsors of the bill provided that:

> The emotional trauma following sexual assault does not present the same in all survivors and may lead to a delay in seeking medical or legal assistance. The time a survivor needs to process and recover from their assault, enough to engage with the legal system, can take months and even years, certainly longer than the two years currently allowable for many survivors to seek civil restitution.

Dkt. No. 14-3 at p. 7.

### C. Even in Plaintiff's Claims are Untimely, Defendant is Estopped From Asserting a Statute of Limitations Defense

When a defendant perpetuates "acts of violence or intimidation that are intended to prevent the filing of a claim," they are estopped from asserting a statute of limitations affirmative defense. *John R. v. Oakland Unified Sch. Dist*. (1989) 48 Cal.3d 438, 445 (internal citations omitted). For a defendant to be estopped from using a statute of limitations defense, four elements must be satisfied: (1) defendant must be apprised of the facts; (2) defendant must intend that his conduct shall be acted upon, or must act that the party asserting the estoppel had a right to believe it was intended; (3) the plaintiff must be ignorant of the true state of facts: and (4) plaintiff must rely on the conduct to their injury. *Driscoll v City of Los Angeles,* (1967) 67 Cal. 2d 297.

Nevertheless, two prongs are given primacy by the courts: (1) that the defendant's conduct misled the plaintiff, and (2) that plaintiff reasonably relied on that conduct; bad faith or an intent to mislead is not required. *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384; *Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 43. Such that "it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss. . .. Where the delay in commencing action is induced by the conduct of a defendant it cannot be availed by him as a defense." *Vu v Prudential Property and Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152-3. Therefore [i]t is sufficient that the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings." *Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 78-79.

Plaintiff has pled sufficient facts to show that Defendant's conduct misled Plaintiff and Plaintiff relied on Defendant's conduct.[35] Specifically, Defendant abused Plaintiff physically, mentally, and emotionally, and Plaintiff reasonably feared that he would continue to do so.

---

[35] Dkt. 14 at ¶ 16, 22, 23.

9

Additionally, Defendant repeatedly threatened to revoke his support for her visa application and ruin her professional career.[36]

When a defendant threatens adverse immigration action, he many not later avail themselves of the statute of limitations. *Ateeq v Najor* (1993) 15 Cal.App.4th 1351, 1356. Defendant did exactly this.[37] For Plaintiff, these were not empty threats. Defendant provided written documentation that was vital to Plaintiff's visa process; Plaintiff believed that Defendant had the ability to act on his threat if he so wished.[38] Since Defendant used his status as an authority figure to induce Plaintiff to act, he may not avail himself of the statute of limitations defense. *Doe v. Bakersfield City School Dist*. (2006) 136 Cal.App.4th 556, 39 Cal.Rptr.3d 79 (reversing lower court and finding that defendant was estopped from asserting timeliness defense where defendant had threatened and abused plaintiff).

Second, Defendant used his status as a senior figure in the entertainment industry to force Plaintiff to silently endure his twisted torture because Plaintiff believed he could end her career.[39] As the *Bakersfield* court found: "The evidence indicates that, far from becoming a consensual relationship. . ., [Defendant] merely continued his pattern of manipulating plaintiff and inserting himself into plaintiff's life. . .." *Id.* at 92. The same is true in the present case: Defendant manipulated his situation with Plaintiff, dangling professional opportunities over Plaintiff while they lived together and threatening to intervene in her citizenship process after she escaped him, all the while subjecting Plaintiff to egregious sexual and physical abuse.[40] Further, as in *Bakersfield*, Plaintiff's fears were further "reinforced by [the abuser's] apparent ability to enlist others" in continuing the abuse. *Id*. Defendant similarly threatened to, and did in fact, use his status to enlist

---

[36] Dkt. 14 at ¶ 20.
[37] Dkt. 12 at ¶ 20, 22.
[38] Dkt. 12 at ¶ 20.
[39] Dkt. 12 at ¶ 16, 21.
[40] Dkt. 12 at ¶ 22.

10

others in his quest to exact further control over Plaintiff, as evidenced by Defendant sending sexually explicit photographs of Plaintiff without her consent and inserting himself in Plaintiff's immigration proceedings.[41]

Indeed, while Plaintiff was subjected to all of these threats, Defendant also repeatedly threatened Plaintiff's life.[42] Defendant isolated Plaintiff from her family, supplied Plaintiff with harmful drugs, and refused to let Plaintiff eat.[43] All the while Defendant repeatedly abused and sexually tortured Plaintiff.[44] Once Plaintiff finally escaped from Defendant, he threatened to "punish" Plaintiff if the two ever met again.[45] Plaintiff had no reason not to believe that Defendant could and, if necessary, would take lethal action against her; indeed, the mental and emotional anguish Plaintiff still suffers as a result of Defendant's abuse is a sharp reminder of this fact.[46]

That Plaintiff and Defendant no longer have a relationship has no bearing on the argument that Defendant is estopped from asserting a statute of limitations affirmative defense. *Doe v. Bakersfield,* 39 Cal.Rptr.3d 79, 90-1. In *Bakersfield*, the Court recognized that a Defendant's threats could "still hav[e] a deterrent effect" <u>long after an abusive relationship ends and the abuse is finally disclosed</u>. *Id.*(emphasis added). The statute of limitations is tolled "until the effect of a threat ceases." *Groom v. City of El Paso De Robles,* 2020 WL 5947822 at *5 (C.D. Cal. 2020).

Nor does Plaintiff need to specifically plead equitable estoppel in the Complaint if it is not clear on the face of the Complaint that the statute of limitations has clearly run *Ateeq v Najor* (1993) 15 Cal.App.4th 1351, 1358 (holding that a plaintiff raising the equitable estoppel defense in a response to a defendant's motion for defense judgment was timely, since the complaint did not

---

[41] Dkt. 12 at ¶ 16, 21.
[42] Dkt. 12 at ¶ 14, 15, 21.
[43] Dkt. 12 at ¶ 14.
[44] Dkt. 12 at ¶ 21, 22, 23.
[45] Dkt. 12 at ¶ 22.
[46] Dkt. 12 at ¶ 24.

clearly show the statute of limitations had run). Plaintiff has pled sufficient facts to show that the statute of limitations had not clearly run.[47] Plaintiff brought suit under California's recently amended sexual assault statute, CAL. CODE CIV. PROC. § 340.16, which states, in relevant part, that a Plaintiff must bring suit "[w]ithin 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault by the defendant against the plaintiff." § 340.16. Furthermore, it states that it applies to any action "that is commenced on or after January 1, 2019." *Id*.

Based on a plain reading of the statute, the statute of limitations appears clear: "10 years from the date of the last act" and it applies to any action "that is commenced on or after January 1, 2019." *Id*. Any contrary reading, as Defendant argues is found in the legislative history, is not dispositive evidence that the statute had "clearly run."[48] Given that there is no reading of the statute that clearly demonstrates the limitations period had expired, Plaintiff need not have pled an equitable estoppel defense with specificity in her complaint. *See Ateeq* at 1358.

Finally, whether a defendant is estopped from using a statute of limitations defense is a context-driven inquiry. *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 75 Cal.Rptr.2d 777, as modified on denial of reh'g (July 10, 1998); *Christopher P. v. Mojave Unified School Dist.* (1993) 19 Cal.App.4th 165, 23 Cal.Rptr.2d 353. There is no singular example of what constitutes a "threat" for purposes of equitable estoppel. *Id*. The "totality of the circumstances" must be measured in the individual case in question to determine whether the threats made against Plaintiff prevent a Defendant from taking advantage of the statute of limitations. *Id*.

Here, there is no doubt that the threats made by Defendant to Plaintiff meet this context-driven threshold. Not only did Defendant threaten Plaintiff's professional life by blacklisting

---

[47] Dkt. 12. And ¶ 16, 22.
[48] *See* Dkt. 14.

Plaintiff from the prospect of future work and threatening to withdraw his support for her visa process, but he made multiple personal threats against Plaintiff's life.[49] Defendant threatened repeatedly to rape Plaintiff, forcibly kissed her, groped her, whipped her, and prevented Plaintiff from leaving his presence.[50] Defendant regularly threatened Plaintiff's life, and then cut Plaintiff during sex, deprived her of food, and gave her drugs.[51] Plaintiff had no reason to believe Defendant Warner's threats were empty—he acted on them with impunity throughout his formal relationship with Plaintiff. Such action only reinforced the legitimacy and long-lasting effect of Defendant Warner's torturous grip over Plaintiff, manifesting in a host of mental and emotional afflictions.[52] For these reasons, Defendant should be estopped from asserting a statute of limitations defense.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied. In the alternative, Plaintiff respectfully requests the Court grant Plaintiff leave to submit a Second Amended Complaint.

Dated: August 13, 2021

Jay D. Ellwanger
California Bar No. 217747
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Highway
Suite 190
Austin, Texas 78731
jellwanger@equalrights.law
(737) 808-2260
(737) 808-2262 (facsimile)
Attorney for Plaintiff

---

[49] Dkt. 12 at ¶ 16, 20, 22.
[50] Dkt. 12 at ¶ 15, 24.
[51] Dkt. 12 at ¶ 14, 21.
[52] Dkt. 12 at ¶ 24.

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger