Case 2:21-cv-03677-FLA-MAR   Document 26   Filed 10/07/21   Page 1 of 13   Page ID #:179

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMÉ BIANCO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN WARNER, a/k/a MARILYN MANSON, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:21-cv-03677-FLA (MARx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [DKT. 14]**<br><br>Date:　　　August 27, 2021<br>Time:　　　1:30 p.m.<br>Courtroom:　6B |

1

## RULING

Before the court is Defendant Brian Warner's ("Warner," a/k/a Marilyn Manson) Motion to Dismiss Plaintiff Esmé Bianco's ("Bianco" or "Plaintiff") First Amended Complaint ("Motion").  Dkts. 14, 14-1 ("Mot. Br.").  Plaintiff opposes the Motion.  Dkt. 18 ("Opp.").

For the reasons stated below, the court DENIES the Motion.  Defendant Warner shall file an Answer to the First Amended Complaint ("FAC") within fourteen (14) days of this order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

## PROCEDURAL HISTORY

Plaintiff filed this action on April 30, 2021.  Dkt. 1.  On July 16, 2021, Plaintiff filed a corrected FAC, alleging causes of action for: (1) sexual assault, pursuant to Cal. Code Civ. Proc. § 340.16; (2) sexual battery, pursuant to Cal. Civ. Code § 1708.5 (erroneously identified as Cal. Code Civ. Proc. § 1708.5); and (3) violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589.  *See* FAC ¶¶ 33-43.  On the subject Motion filed July 28, 2021, Defendant Warner moves to dismiss only Plaintiff's first and second claims for sexual assault and sexual battery, arguing they are time-barred by the applicable statute of limitations.  *See generally* Mot.

On August 27, 2021, the court held a hearing on Defendant Warner's Motion, at which time the court ordered the parties to jointly file additional legislative history for Cal. Code Civ. Proc. § 340.16.  Dkt. 21.  The parties filed the legislative history materials on September 3, 2021.  Dkt. 22.

## FACTUAL BACKGROUND

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *E.g.*, *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016).  Accordingly, the court accepts as true the following allegations from Plaintiff's FAC.

2

Plaintiff is an actress and performer, best-known for her role as "Ros" in the television show *Game of Thrones*. FAC ¶ 4. Defendant Warner is a recording artist based in Los Angeles, California, who founded Marilyn Manson Records, Inc. in 1999. *Id.* ¶¶ 3, 11. Plaintiff and Warner first met in 2005 through Warner's then-fiancée. *Id.* ¶ 12. Warner expressed an interest in casting Plaintiff in an upcoming film project. *Id.* The parties stayed in touch over the next two years, and Warner visited Plaintiff in the United Kingdom, where she resided at the time. *Id.* In 2007, Warner, now divorced, made his first sexual advances towards Plaintiff, requesting she send him nude photographs. *Id.* ¶ 13.

In February 2009, Warner flew Plaintiff to Los Angeles under the premise that she would be featured in a music video for Warner's song, "*I want to kill you like they do in the movies.*" *Id.* ¶ 14. Upon arrival, Plaintiff found there was no crew present and that she was expected to stay in Warner's home, rather than the hotel that was booked. *Id.* She was also told to wear lingerie as her "costume" for the video. *Id.* Throughout the four days she spent in Los Angeles, Plaintiff was subjected to sleep deprivation and provided drugs and alcohol, but not food. *Id.*

During the shoot, Warner attempted to force Plaintiff to perform sexual acts on camera with another woman. *Id.* ¶ 15. He physically beat Plaintiff and repeatedly threatened to come to Plaintiff's room and rape her during the night. *Id.* One day, Warner locked Plaintiff in a bedroom, tied her to a prayer kneeler, beat her with a whip that he said was utilized by Nazis, and electrocuted her. *Id.* Plaintiff believed that if she protested the way Warner treated her, she would be barred from future professional opportunities, or he would continue to harm her. *Id.* ¶ 16. Plaintiff never saw any footage from the February 2009 music video shoot, and does not believe it ever came to fruition. *Id.*

In May 2009, Defendant Warner visited Plaintiff in London and they began a consensual sexual relationship. *Id.* ¶ 18. Warner, however, bruised, bit, and publicly groped Plaintiff without her consent. *Id.* After this visit, the parties maintained a

long-distance relationship for several years. *Id.* ¶ 19. Warner flew Plaintiff to Los Angeles for visits, telling her they would shoot videos and record music, which were never actually recorded. *Id.*

In April 2011, Plaintiff moved to Los Angeles to live with Warner while he helped her secure a visa and launch her career in the United States. *Id.* ¶ 20. Warner also told Plaintiff she would star in his upcoming feature film, *Phantasmagoria*. *Id.* For two and a half months during 2011, Warner controlled Plaintiff's movements. *Id.* He forced Plaintiff to stay awake for days at a time, did not permit her to leave the apartment without permission, and did not allow her to have visitors. *Id.* He threatened to interfere with her ongoing visa process. *Id.* Warner also berated Plaintiff if she wore outfits he did not like, touched the thermostat which remained at 63 degrees Fahrenheit, attempted to open the curtains in the apartment, expressed discomfort with the violent and sexually graphic films he played, or failed to find objects he hid around the apartment. *Id.* ¶ 21.

On one occasion in 2011, Warner chased Plaintiff around the apartment with an axe and smashed holes in the walls. *Id.* ¶ 22. Another time, he cut Plaintiff with a Nazi knife during sex without her consent, photographed the cuts on her body, and then posted the photos online without her consent. *Id.* Warner also committed sexual acts with Plaintiff when she was unconscious or otherwise unable to consent. *Id.* ¶ 31. On several occasions, Warner spanked, bit, cut, and whipped Plaintiff's buttocks, breasts, and genitals for his sexual gratification, all without Plaintiff's consent. *Id.* ¶ 32. Plaintiff escaped Warner's apartment in June 2011 while he slept. *Id.* ¶ 22. In response, Warner threatened to have her visa revoked and to "punish" her when he next saw her. *Id.*

In 2013, Plaintiff attended one of Warner's shows in Las Vegas. *Id.* ¶ 23. After the show, Warner forcibly kissed Plaintiff without her consent and attempted to block her from leaving. *Id.* Plaintiff was able to leave when her friends intervened. *Id.*
///

Plaintiff alleges it has taken her years to understand the extent of Warner's physical, sexual, psychological, and emotional abuse. *Id.* ¶ 24. She suffers from complex Post-Traumatic Stress Disorder, anxiety, depression, and panic attacks, and her career has suffered due to the deterioration of her mental health caused by Warner. *Id.*

## DISCUSSION

### I. Warner's Request for Judicial Notice

Defendant Warner requests the court take judicial notice of four exhibits, which are legislative history records of Cal. Code Civ. Proc. § 340.16 ("Section 340.16"). Dkt. 14-2. Plaintiff does not oppose the request.

A court may take judicial notice of any adjudicative fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Legislative history is properly a subject of judicial notice. *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *see also Louie v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal. 2006) ("Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of … the legislative history of state statutes … .").

Accordingly, the court GRANTS Warner's request. The court also considers the supplemental legislative materials the parties submitted on September 3, 2021, and takes judicial notice of the California legislature's drafts of Section 340.16. *See* Dkt. 22.

### II. Warner's Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating

5

a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The statute of limitations defense "may be raised by a motion for dismissal [under Fed. R. Civ. P. 12(b)(6)] … [i]f the running of the statute is apparent on the face of the complaint … ." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted); *see also ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint.") A defendant's motion to dismiss, therefore, can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove plausibly that the statute was tolled or that the defendant is equitably estopped from raising the statute of limitations defense. *See Jablon*, 614 F.2d at 682, *as modified by Iqbal*, 556 U.S. at 678.

### A. The Applicable Statute of Limitations

First, the parties dispute whether a two-year or ten-year statute of limitations applies to Plaintiff's sexual assault and sexual battery claims. As Plaintiff alleges Warner abused her from 2009 through 2013 and she filed suit in 2021, her claims will have lapsed if the two-year statute of limitations applies, absent an exception that extends the statute of limitations.

Defendant Warner argues Cal. Code Civ. Proc. § 335.1 ("Section 335.1"), which applies to assault, battery, and personal injury actions, establishes a two-year statute of limitations in this action. Mot. Br. 2-4. Warner acknowledges that Section

340.16, adopted on January 1, 2019, extends the statute of limitations for adults who have suffered sexual assault, but contends it does not apply to claims that already lapsed under Section 335.1 prior to its adoption. Mot. Br. 4-6.

Section 340.16, in relevant part, provides:

> (a) In any civil action for recovery of damages suffered as a result of sexual assault, where the assault occurred on or after the plaintiff's 18th birthday, the time for commencement of the action shall be the later of the following:
>
> > (1) Within 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff.
> >
> > (2) Within three years from the date the plaintiff discovers or reasonably should have discovered that an injury or illness resulted from an act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff. [ … ]
>
> (b)(3) This section applies to any action described in subdivision (a) that is commenced on or after January 1, 2019.

Plaintiff argues that under the plain meaning of Section 340.16, the ten-year statute of limitations applies because this lawsuit was filed "on or after January 1, 2019." Opp. 6-7.

### 1.    *Legal Standard*

In interpreting California statutes, federal courts follow California's principles of statutory construction. *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). Cal. Code Civ. Proc. § 1859 provides that "[i]n the construction of a statute the intention of the Legislature … is to be pursued, if possible[.]" *See also People v. Massie*, 19 Cal. 4th 550, 569 (1998), *cert. denied*, 526 U.S. 1113 (1999) (declaring that the "ultimate task" in statutory interpretation "is to ascertain the Legislature's intent"). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *Pac. Gas & Elec. Co. v. Cnty. of Stanislaus*, 16 Cal. 4th 1143, 1152 (1997). Courts, thus, first give the language of the statute "its usual, ordinary import and accord[] significance, if possible, to every word, phrase and sentence in

pursuance of the legislative purpose." *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*, 43 Cal. 3d 1379, 1386-87 (1987). When the wording of the statute is ambiguous, however, a court may consider extrinsic evidence of the legislature's intent, "including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 776 (1998). "A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable." *Id.*

Alongside this statutory interpretation framework, there is also a presumption against applying legislation retroactively in light of due process concerns. *McClung v. Emp. Dev. Dep't*, 34 Cal. 4th 467, 475 (2004) ("The presumption against retroactive legislation is deeply rooted in our jurisprudence … [because] [e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly … .") (internal quotation omitted). Thus, generally, statutes operate prospectively only. *Id.* (internal quotation omitted). A statute may be applied retroactively "only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." *Myers v. Philip Morris Cos.*, 28 Cal. 4th 828, 844 (2002) (emphasis omitted); *see also* Cal. Code Civ. Proc. § 3 ("No part of [the California Code of Civil Procedure] is retroactive, unless expressly so declared.").

In *David A. v. Super. Ct.*, 20 Cal. App. 4th 281 (1993) (superseded by statute as discussed in footnote one, below), the court considered an amendment to Cal. Code Civ. Proc. § 340.1 ("Section 340.1") that extended the statute of limitations for childhood sexual abuse. The statute provided that the longer limitations period applied to "any action commenced on or after January 1, 1991." *Id.* at 286. Finding this language "oblique" and "unclear," the court ruled the statute was "insufficiently explicit" to overcome the presumption against retroactivity, particularly in light of

8

legislative history showing early versions of the bill contained revival language that was subsequently deleted. *Id.* at 287-88. The California Supreme Court later cited *David A.* with approval, noting "'any action commenced on or after January 1, 1991' ... did not constitute express language of revival" and was "held to be insufficient to revive lapsed claims." *Quarry v. Doe I*, 53 Cal. 4th 945, 964 (2012).[1]

### 2. Analysis

The court is required to follow California law in determining whether the two-year or ten-year statute of limitation applies to Plaintiff's sexual assault and sexual battery claims. Here, Section 340.16 provides that it applies to "any action ... commenced on or after January 1, 2019," mirroring the statutory language discussed in *David A*. *See David A.*, 20 Cal. App. 4th at 286 (finding that "any action commenced on or after January 1, 1991" was not sufficiently explicit to overcome the presumption against retroactivity); *see also Quarry*, 53 Cal. 4th at 963-64, 969 (recognizing this language did not revive lapsed claims). Accordingly, the court must find the language ambiguous and insufficiently explicit to overcome the presumption against retroactivity.

Furthermore, as in *David A.*, examination of Section 340.16's legislative history reveals that language of express retroactivity was removed: an earlier iteration of the statute made the new limitations period applicable to "any action or causes of action ... that would have been barred by the laws" under the prior limitations period, and "reviv[ed] those causes of action which had lapsed or technically expired under the law existing prior to January 1, 2019." *See* Dkt. 22 at 12. As this language explicitly

---

[1] The California Legislature responded to *David A.* by amending Section 340.1 to state that the extended statute of limitations "shall apply to any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." *Quarry*, 53 Cal. 4th at 964 (citing former § 340.1, subd. (*o*), added by Stats. 1994, ch. 288, § 1, pp. 1928, 1930, now § 340.1, subd. (r)).

reviving lapsed claims was stricken prior to the enactment of the final version of the statute, the court must infer that the California legislature chose not to provide for revival. *See id.*

In sum, following the lead of the California courts in *David A.* and *Quarry*, the court finds that the language of Section 340.16 does not apply retroactively to revive lapsed claims. *See Clarendon v. Regents of the Univ. of Cal.*, No. RG19041357, 2020 WL 8409990, at *5 (Cal. Super. Nov. 4, 2020) (citing *Quarry* and *David. A.* and finding "the statement that 340.16 applies to actions 'commenced on or after January 1, 2019' is not the clear indication [of] intent to revive claims that Quarry v. Doe requires"). As a result, Section 335.1's two-year statute of limitations applies to Plaintiff's claims.

The court must next consider whether the FAC pleads sufficient facts to allege Defendant Warner is equitably estopped from asserting the statute of limitations defense, or whether the statute of limitations was tolled.[2]

### B. Equitable Estoppel[3]

#### 1. Legal Standard

"[T]he doctrine of equitable estoppel takes its life … from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exch.*, 132 Cal. App. 4th 1076, 1089 (2005) (internal quotations omitted). Estoppel may be appropriate in the statute of limitations context "where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit." *Doe*

---

[2] As the court, below, finds the facts alleged in the FAC are sufficient to survive Defendant Warner's Motion on an estoppel theory, the court need not reach the parties' arguments regarding tolling and the delayed discovery rule.

[3] This court applies the equitable estoppel law of California courts. *See, e.g.*, *Yeager v. Bowlin*, 495 F. App'x 780, 782 (9th Cir. 2012) (applying California law for equitable estoppel analysis).

*v. Marten*, 49 Cal. App. 5th 1022, 1028 (2020). "The existence of an estoppel is generally a question of fact for the trial court … ." *Id.* at 1029.

California courts have acknowledged that "estoppel by duress" may apply in the context of sexual abuse. Specifically, a defendant is estopped from raising the statute of limitations defense if (1) the defendant engages in "unconscionable acts" such as threats, intimidation, coercion, or misrepresentations that deter the plaintiff from filing a claim, and (2) the plaintiff establishes she filed the claim "within a reasonable time after the effects of the acts ended." *See Ortega v. Pajaro Valley Unified Sch. Dist.*, 64 Cal. App. 4th 1023, 1048 (1998), *as modified on denial of reh'g* (July 10, 1998); *see also John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 445-46 (1989) (finding estoppel applies when a defendant perpetuates "acts of violence or intimidation that are intended to prevent the filing of a claim," and the plaintiff establishes she "acted within a reasonable time after the coercive effect of the threats had ended") (emphasis omitted). In *Doe v. Bakersfield City Sch. Dist.*, 136 Cal. App. 4th 556, 572 (2006), the California Court of Appeal recognized that a defendant's threats could "still hav[e] a deterrent effect" long after a sexually abusive relationship ends.

### 2. Analysis

Plaintiff pleads numerous facts alleging Warner abused her both physically and emotionally over a period of years. FAC ¶¶ 14-15. Plaintiff contends Warner controlled essentially every aspect of her life for months at a time, and purported to hold power over her career in the United States. *Id.* ¶¶ 20-21. Once Plaintiff escaped from Warner, he threatened "to 'punish' her when he next saw her." *Id.* ¶ 22. The FAC also alleges Warner threatened to interfere with Plaintiff's visa process,[4] an allegation which, taken alone, may warrant estoppel. *Id.* ¶ 20; *see Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1356 (1993) (finding a defendant who threatened adverse

---

[4] Plaintiff represented at the hearing that she obtained U.S. citizenship in September 2019, approximately a year and a half before filing suit.

11

immigration action against the plaintiff was estopped from asserting the statute of limitations defense). The FAC, therefore, adequately alleges Warner engaged in unconscionable acts that could have caused Plaintiff to refrain from instituting legal proceedings against him.

Warner argues Plaintiff did not act within a reasonable time because she filed her case approximately ten years after the alleged conduct ceased in 2011, and eight years after her last contact with him in 2013. Dkt. 19 at 6. But the issues of when the effects of Warner's alleged unconscionable acts ceased, and whether Plaintiff filed suit within a reasonable time after the coercive effects of these acts ended, are ultimately questions of fact not to be determined by the court at this stage as a matter of law. *See John R.*, 48 Cal. 3d at 446 (remanding action to trial court to determine factual issues relevant to the equitable estoppel doctrine, including (1) whether defendant threatened plaintiff, (2) when the effect of any such threats ceased, and (3) whether plaintiff acted within a reasonable time after the coercive effect of the threats had ended).

Warner is alleged to be an influential recording artist with connections in the entertainment industry throughout Los Angeles. FAC ¶¶ 11, 25, 29. A reasonable jury could find that the effects of Warner's alleged unconscionable acts, including the perceived threat to Plaintiff's safety, immigration status, and career, persisted years after her last contact with Warner. As a result of Warner's abuse, Plaintiff also allegedly suffers from complex Post-Traumatic Stress Disorder, anxiety, depression, and panic attacks. FAC ¶ 24. Given Plaintiff's post-abuse struggles, a jury could also find that Plaintiff filed suit within a reasonable time after the coercive effects of Warner's unconscionable acts ended. *See, e.g.*, Dkt. 22 at 23 (legislative history of Section 340.16, acknowledging a two-year statute of limitations "simply does not provide sexual assault survivors adequate time to heal from the physical and emotional trauma of a sexual assault and prepare for a civil case").

///

! Accordingly, the court finds the facts alleged in the FAC plausibly state a theory for estoppel and are sufficient to survive Defendant Warner's Motion to Dismiss.

## CONCLUSION

For the reasons stated above, the court DENIES Defendant Warner's Motion to Dismiss (Dkt. 14). Warner shall file an Answer to the FAC within fourteen (14) days of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

IT IS SO ORDERED.

Dated: October 7, 2021

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge