KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
JOHN G. SNOW, ESQ., STATE BAR NO. 280790
JACKSON S. TRUGMAN, ESQ., STATE BAR NO. 295145
JSNOW@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Defendant
BRIAN WARNER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ESMÉ BIANCO,<br><br>            Plaintiff,<br><br>     vs.<br><br>BRIAN WARNER a/k/a MARILYN MANSON, individually; MARILYN MANSON RECORDS, INC.,<br><br>            Defendants. | CASE NO. 2:21-CV-3677-FLA-MAR<br><br>**DEFENDANT BRIAN WARNER'S OPPOSITION TO MOTION TO MODIFY SUBPOENA**<br><br>Date:   Sept. 30, 2022<br>Time:   1:30 pm<br>Crtrm.: 790<br><br>The Hon. Margo A. Rocconi |

3310.090/1850910.1

## I. INTRODUCTION

Non-party Ashley Morgan Smithline's untimely motion to modify the deposition subpoena served on her should be denied because the subpoena does not impose an "undue burden" and her purported counsel that filed the motion, Jay Ellwanger—who remains counsel for Plaintiff Esmé Bianco—has apparently misrepresented Ms. Smithline's wishes and the reasons she could not timely comply with the subpoena. Far from having any merit, the motion is a clear attempt by Mr. Ellwanger to buy *himself* time in light of the serious ethical questions arising from his "withdrawal" from representing Ms. Smithline and his continued representation of Plaintiff Bianco in this action, in which Ms. Smithline is a key witness.

Ms. Smithline's deposition was originally scheduled with mutual agreement of counsel for August 17, 2022, with the witness appearing by Zoom from England. But in the afternoon on August 16, Mr. Ellwanger urgently requested that Defendants agree to postpone it because he said Ms. Smithline could not attend and was on a plane to Los Angeles to receive emergency psychiatric treatment. Relying on Mr. Ellwanger's representation, Defendants agreed to continue to deposition to the mutually agreed date of August 30, contingent on Mr. Ellwanger's promise and agreement to provide a complete production of the documents requested in the subpoena by the end of the day on August 16, which documents he said were already in his possession and ready for production, and to later provide a written note from Ms. Smithline's treating professional that she was unable to appear on August 17.

Mr. Ellwanger immediately broke his promises by producing only four redacted text messages on August 16, which no person could reasonably believe was a "complete production" because these documents explicitly refer to other responsive communications that were not produced. Defendants informed Mr. Ellwanger of this, but he has made no effort to supplement the production.

Mr. Ellwanger also never produced a medical note to substantiate his

representations that Ms. Smithline was unable to attend her deposition on August 17. Instead, he has since filed a motion to withdraw as Ms. Smithline's counsel in her separate case against Defendants. And the day before Ms. Smithline's rescheduled deposition in this case, he filed the present motion to "modify" the deposition subpoena "to provide Ms. Smithline 90 days to secure representation by new counsel." But what's worse, after Mr. Ellwanger filed these motions, Ms. Smithline unilaterally emailed Defendants' counsel communications between her and Mr. Ellwanger—which she has also distributed to third parties online—showing not only that she was never coming to Los Angeles for emergency medical treatment (or undergoing treatment elsewhere), but also that she fired Mr. Ellwanger months earlier in April 2022. Ms. Smithline added that for "a 'me too' lawyer," Mr. Ellwanger "doesn't listen to the word no." In response, Defendants' counsel informed Ms. Smithline, copying Mr. Ellwanger, that "as long as Jay Ellwanger is your counsel of record, I am not permitted to communicate with you absent his consent." Ms. Smithline responded stating unequivocally, with Mr. Ellwanger still copied, that she had fired Mr. Ellwanger and he is "lying."

Thus, contrary to Mr. Ellwanger's arguments in the motion that Ms. Smithline will be prejudiced absent a 90-day continuance to find new counsel, Ms. Smithline is conducting herself as if she wishes proceed on her own, which is not uncommon with third-party subpoenas. There is no evidence she wishes to retain new counsel or postpone the deposition. Nor is there evidence to justify Mr. Ellwanger's delay in waiting until August 29—the day before the rescheduled deposition—to file the motion based solely on his "withdrawal," given Ms. Smithline's repeated statements that she fired him months earlier. Even taking Mr. Ellwanger's word that Ms. Smithline "assented" to his termination on August 19, the motion is still untimely. He cannot justify waiting more than a week after Ms. Smithline reconfirmed his termination as her counsel, blithefully ignoring the extensive preparation Defendants' counsel had to undertake and the many requests for Mr. Ellwanger to

confirm whether Ms. Smithline was appearing for the rescheduled deposition.

The Motion should be denied and Ms. Smithline's deposition should be ordered to proceed forthwith.

## II. FACTUAL BACKGROUND

### A. Multiple women falsely accuse Mr. Warner of abuse in early 2021.

Mr. Ellwanger represents Ms. Bianco in this action and purports to have represented Ms. Smithline in the action filed against Defendants captioned *Smithline v. Warner et al.*, Case No. 2:21-cv-05289-FLA-MAR (C.D. Cal.). Mr. Ellwanger was referred to Ms. Smithline by Ms. Bianco. Ms. Smithline claims the abuse took place in 2010, and Ms. Bianco, in 2011. Ms. Bianco, Ms. Smithline, and other women who simultaneously emerged with false allegations of abuse in early 2021, have stated in court filings that before making their public accusations against Mr. Warner—all based on acts alleged to have occurred as much as ten or more years earlier—they met and spoke with each other, often as a group, regarding the accusations they would make. *See, e.g.,* Dkt. 18 at 12 ("Plaintiff did not recognize the true extent of her psychological injuries, nor that the actions committed by Defendant constituted sexual assault and sexual battery, until meeting with other victims and speaking about her abuse in 2020."); Complaint, ¶ 44, Dkt. 8, *Smithline v. Warner et al.*, 2:21-cv-05289-FLA-MAR (Jun. 29, 2021 C.D. Cal.) ("[T]he true extent of the injuries suffered by Ms. Smithline were not fully realized until Fall 2020, when she began meeting with other survivors of Mr. Warner's abuse.").

### B. Mr. Warner subpoenas Ms. Smithline in this action.

On July 1, 2022, Mr. Ellwanger agreed to accept service of a subpoena on behalf of Ms. Smithline in this action. King Decl., Ex. A at 2. Mr. Warner's counsel asked Mr. Ellwanger to confirm he still represented Ms. Smithline, given that in May, Ms. Smithline left voicemail messages for Mr. Warner's counsel stating she "fired" Mr. Ellwanger, who she referred to as her "former attorney." *Id.*, ¶ 2. Mr. Ellwanger responded that he still represented Ms. Smithline. *Id.*, Ex. A at 1.

On July 12, Mr. Ellwanger stated that Ms. Smithline would be available for a video deposition on August 17. *Id.*, Ex. B. Accordingly, Mr. Warner served the subpoena for an August 17 deposition. *Id.*, Ex. C. The subpoena included a single document request: "All written communications with Esmé Bianco, Evan Rachel Wood, and/or Ashley Gore aka Illma Gore regarding Brian Warner, including but not limited to text messages, emails, social media messages, and any other direct messages." *Id.* at 2. Ms. Smithline did not provide any objections to the subpoena.

On August 10, counsel for Mr. Warner emailed Mr. Ellwanger asking whether all responsive documents would be produced at least 48 hours before the deposition. *Id.*, Ex. D at 3. Mr. Ellwanger never responded.

### C. Ms. Smithline postpones on less than 24 hours' notice.

On the afternoon of August 16, Mr. Ellwanger called counsel for Mr. Warner and stated that Ms. Smithline would not be able to appear at her deposition the next morning "due to medical reasons," *id.* at 1-2, which Mr. Ellwanger explained meant she was flying to Los Angeles to receive treatment for "emergency psychiatric issues." *Id.*, Ex. E.

In exchange for Mr. Warner's agreement not to require an emergency motion for protection, Mr. Ellwanger agreed to reschedule the deposition to August 30, and promised to provide (1) Ms. Smithline's complete production of documents by August 16, and, (2) by August 30, "a written report from her treating professional confirming that Ms. Smithline was medically unable to appear tomorrow and setting forth any further purported restrictions (including the basis therefore) that might affect her ability to sit for deposition on August 30." *Id.*

### D. Ms. Smithline fails to comply with the subpoena's document request.

On the afternoon of August 16, Mr. Ellwanger's office produced documents purportedly on behalf of Ms. Smithline. *Id.*, Ex. F. However, the production was facially deficient. The mere 76 pages of documents comprised only four text

message chains involving Ms. Smithline and Ms. Bianco, two of which were Ms. Bianco's (not Ms. Smithline's) documents. Indeed, the documents bore Ms. Bianco's Bates stamps. There were no emails, and no communications whatsoever between Ms. Smithline and Ms. Gore or Ms. Wood. And the documents themselves internally referred to other communications Ms. Smithline did not produce. *See id.*, Ex. I. Further, over a dozen pages contained redactions, and on August 17, Mr. Ellwanger's office provided a privilege log for only some of the redactions, which purported to claim attorney-client privilege over communications between Ms. Bianco and Ms. Smithline, without any attorney. *Id.*, Ex. G.

On August 17 and 18, Mr. Warner's counsel asked whether Mr. Ellwanger served the complete production he had promised. *Id.*, Ex. H at 2. Mr. Warner's counsel also asked whether Ms. Smithline was, in fact, in Los Angeles, as it appeared from her Instagram account that she was still in London. *Id.* Mr. Ellwanger responded, stating the four chats and privilege log "were responsive to the subpoena." *Id.* at 1. However, he would not confirm that these were the promised complete production. *Id.* Mr. Ellwanger also stated, in response to the question about Ms. Smithline's whereabouts, "I already told you she's in Los Angeles." *Id.*

On August 24, counsel for Mr. Warner emailed Mr. Ellwanger explaining the numerous deficiencies in Ms. Smithline's document production—including the missing documents and baseless claims of privilege. *Id.*, Ex. I at 1-2. He asked Mr. Ellwanger to confirm Ms. Smithline would (1) supplement the production no later than Friday, August 26 (including to provide unredacted documents), and (2) appear at her rescheduled deposition on August 30. *Id.* Mr. Ellwanger never responded to this email.

/ / /

/ / /

/ / /

### E. Mr. Ellwanger fails to substantiate the supposed August 17 emergency, and refuses to confirm whether Ms. Smithline will attend the rescheduled deposition.

On August 25, Mr. Ellwanger emailed counsel for Mr. Warner stating that "[f]or reasons which I am ethically required to keep confidential, I cannot provide th[e] written assessment," from Ms. Smithline's treating psychiatrist, which Mr. Ellwanger previously promised. *Id.*, Ex. J at 2. Mr. Ellwanger further stated he was "going to have to file a Motion to Withdraw as counsel for Ms. Smithline." *Id.* However, he would not answer whether Ms. Smithline still intended to sit for her rescheduled deposition, or whether she would supplement her deficient document production. *Id.* at 1-2.

### F. Mr. Ellwanger seeks to withdraw after significant delay, confirms Ms. Smithline will not appear at the rescheduled deposition, and seeks relief from the court on less than 24 hours' notice.

On Saturday August 27, Mr. Ellwanger filed a motion in *Smithline v. Warner et al.*, Case No. 2:21-cv-05289-FLA-MAR (C.D. Cal.) seeking to withdraw as counsel for Ms. Smithline. *Id.*, Dkt. 23. Mr. Ellwanger claimed Ms. Smithline's "conduct has rendered it unreasonably difficult for Counsel to carry out the representation effectively," and she "breached Paragraphs 9 and 16 of the Retainer Agreement." *Id.*, Dkt. 23 at 4. He did not attach the agreement or explain what this meant. Mr. Ellwanger further stated Ms. Smithline "knowingly and freely assented to termination of the representation on or about August 19"—eight days earlier. *Id.*

On August 29, Mr. Ellwanger asked to take the August 30 deposition "off calendar" on the grounds that he sought to withdraw as counsel. King Decl., Ex. K at 3. When Mr. Warner's counsel would not agree, Mr. Ellwanger stated (incorrectly) he intended to file a "Motion for Protection," which "operates to stay compliance with the subpoena, so Ms. Smithline will not be appearing tomorrow." *Id.*, at 1.

Instead of filing an *ex parte* application that could be promptly adjudicated, Mr. Ellwanger filed a regularly noticed motion on August 29 seeking to continue the rescheduled August 30 deposition. See Dkt. 48. In it, Mr. Ellwanger argued it would be an "undue burden" for Ms. Smithline to appear on August 30 *pro se* or with Mr. Ellwanger as her counsel. Dkt. 48-1 at 3.[1] He provided a declaration nearly identical to the one attached to his withdrawal motion. Dkt. 48-4.

### G. Ms. Smithline fails to appear on August 30 and tells Mr. Warner's counsel she fired Mr. Ellwanger months ago.

Between the afternoon of August 29 and the morning of August 30, after Mr. Ellwanger filed his motions, Ms. Smithline sent a number of communications that cast serious doubts on Mr. Ellwanger's timeline of events and his multiple representations to counsel for Mr. Warner that Ms. Smithline could not attend her August 17 deposition because she was in Los Angeles receiving medical treatment.

Ms. Smithline sent a number of Instagram messages to a third party stating she fired Mr. Ellwanger in April 2022. In these communications, she shared screenshots of text message exchanges between her and Mr. Ellwanger from April 2022, in which she stated "[I] am looking to discharge you. [P]lease let me know when its done and what needs to happen." King Decl., Ex. L.

Ms. Smithline also called Mr. Warner's counsel's office, stating as soon as he picked up that she fired Mr. Ellwanger in April 2022, and Mr. Ellwanger had not been truthful about why she was not produced for deposition. *Id.*, Ex. M at 1. (Mr. Warner's counsel emailed Mr. Ellwanger informing him of the unsolicited phone call, and asked whether Mr. Ellwanger would consent to him speaking directly to Ms. Smithline, which he would not. *Id.*)

Ms. Smithline also emailed counsel for Mr. Warner, and shared with a third

---

[1] The motion said nothing about Ms. Smithline's existing violation of Mr. Ellwanger's agreement to provide a complete production of responsive documents by August 16, and the subpoena's requirement to do the same by August 17.

party on Instagram, copies of text message conversations between herself and Mr. Ellwanger.  Ms. Smithline expressed shock that Mr. Ellwanger told Mr. Warner's counsel she could not attend the August 17 deposition due to a medical emergency.  Ms. Smithline, a model, responded, "What ?!?!  I had a shoot for a hotel.  He's a lying liar!!"  *Id.*, Ex. N.

In the screenshots of messages she shared, Ms. Smithline told Mr. Ellwanger on August 22 (a week earlier, and five days after the original deposition) that she could not get a letter from her psychiatrist validating Mr. Ellwanger's excuse because, "I've been in London since march NOT under the care of a therapist," and "Stop lying!!  Stop!!  I wasn't in la for an emergency health session!!  Stop lying!!"  *Id.*, Ex. N; *id.,* Ex. O.  And, presumably regarding the attached messages showing her request to "discharge" Mr. Ellwanger months earlier, she stated "For a 'me too' lawyer, man doesn't listen to the word no, innit?"  *Id.*, Ex. O.  (Mr. Warner's counsel copied Mr. Ellwanger on his response to Mr. Smithline, which stated, "I know you told me that you were no longer represented by counsel, but as long as Jay Ellwanger is your counsel of record, I am not permitted to communicate with you absent his consent."  *Id.*)

Despite multiple cautionary warnings by Mr. Warner's counsel that he could not speak to Ms. Smithline as long as Mr. Ellwanger was her counsel of record, she continued to send emails.  Copying Mr. Ellwanger, Ms. Smithline stated, "Short of me saying you're sacked and I fire you, what can I do?"  *Id.*, Ex. P.  She also stated, again copying Mr. Ellwanger, "Do you see how he's lying.  I would trust a fruit bat more than him."  *Id.*, Ex. Q.[2]

---

[2]   In the motion, Mr. Ellwanger provides a vague, non-specific explanation for why he wishes to withdraw now, citing attorney-client privilege.  *See* Dkt. 48-4, ¶¶ 4-7.  However, the provisions of his retainer agreement he contends Ms. Smithline violated are not privileged.  *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2009 WL 3857425, at *1–2 (S.D. Cal. Nov. 16, 2009) ("The

## III. LEGAL STANDARD

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-parties may be "command[ed]" by subpoena to "attend and testify" and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A). Court are authorized to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

Any objection "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FRCP 45(d)(2)(B). Untimely objections are generally waived. *Omnicare, Inc. v. R & W Delivery, LLC*, 2021 WL 4776695, at *2 (C.D. Cal. Mar. 15, 2021) (waiver absent "absent unusual circumstances and a showing of good cause").

Rule 45 permits a court to "quash or modify a subpoena" on a "timely" motion, where the subpoena "subjects a person to undue burden." FRCP 45(d)(3)(A)(iv). "[T]he burden to establish that a subpoena duces tecum imposes an undue burden is on the person who moves to have it quashed [or modified]." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) ("That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena.").

///

---

Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine."). Mover, if Ms. Smithline terminated Mr. Ellwanger in April 2022, none of their communications since are attorney-client communications. *Casas-Cordero v. Salz*, 2012 WL 2190879, at *4 (S.D. Cal. June 14, 2012) ("An attorney's representation of a client ordinarily ends when the client discharges the attorney . . . .") (internal quotations omitted). The privilege belongs to Ms. Smithline, not Ms. Ellwanger, and she has been clear on multiple occasions (including in a May 2022 voicemail to Mr. Warner's counsel), that she terminated Mr. Ellwanger in April 2022.

### IV. THE MOTION TO MODIFY THE NOW THRICE-VIOLATED SUBPOENA SHOULD BE DENIED.

#### A. The Motion is not timely.

Ms. Smithline's motion should be denied because it is not timely under Rule 45. Despite ample notice of not only the original deposition, but also the rescheduled deposition, Mr. Ellwanger decided to wait until less than 24 hours before the rescheduled deposition to seek modification. *See Allstate Ins. Co. v. Nassiri*, 2011 WL 4905639, at *1 (D. Nev. Oct. 14, 2011) (affirming denial of motion where non-party "had three weeks notice of the deposition, yet filed his motion only three business days before the deposition's scheduled date").[3]

Even assuming Mr. Ellwanger's version of the facts, he knew on August 19 he would seek withdraw, but still waited 10 days to file his motion to continue the August 30 deposition. Dkt. 48-4. Mr. Ellwanger also knew as of August 22 (but likely earlier) that he would not get a letter from a psychiatrist providing an alibi for Ms. Smithline on August 17, which he promised as a condition of the continuance on August 16. He also knew Ms. Smithline had been in London since March, despite his multiple representations to the contrary. Yet during this time he ignored multiple emails from counsel for Mr. Warner asking whether Ms. Smithline would appear at the August 30 rescheduled deposition and waited until the day before to seek relief.

Mr. Ellwanger also failed to seek expedited relief. He violated Local Rule 37-1 and Magistrate Judge Rocconi's rules by failing to hold a meet and confer conference and schedule a "pre-motion telephonic conference" with Magistrate Judge Rocconi. *See* Judge's Procedures, https://www.cacd.uscourts.gov/honorable-margo-rocconi; *see also* Dkt. 49 (Notice of Deficiency stating, "The Motion is

---

[3] *See also Delmonte-Wright v. GEICO Cas. Co.*, 2019 WL 5842942, at *2 (D. Nev. Nov. 7, 2019) (finding that waiting "until four business days before the deposition was scheduled to take place" to file motion was "fatal" to request for relief).

noticed before the District Judge when it should be noticed before the Magistrate Judge."). While these rules do not apply to *ex parte* proceedings, Mr. Ellwanger also failed to seek *ex parte* relief, which may have been appropriate for his last-minute request—even if his timeline of late-breaking events is to be credited. *See* L.R. 7-19. Instead, he attempted to file a regularly noticed motion, with a hearing date 30 days from the rescheduled deposition.

None of this establishes that the motion was timely, as is required by Rule 45.

### B. The Motion fails to establish any undue burden.

The premise of the motion is the deposition should be continued because Mr. Ellwanger filed a motion to withdraw as counsel of record. Dkt. 48-1 at 3. However, the motion fails to establish that, even under these circumstances, the subpoena imposes "undue burden" under Rule 45. *See Sol v. Whiting*, 2013 WL 12098752, at *6 (D. Ariz. Dec. 11, 2013) (denying motion to quash where "[m]ovants have not shown that the subpoenas at issue . . . create an undue burden on them as non-parties").[4]

The motion fails to include any authority supporting the proposition that self-representation at a deposition constitutes undue burden. *See Miller v. St. Charles Health Sys., Inc.*, 2019 WL 486175, at *1 (D. Or. Feb. 7, 2019) (motion to quash denied where party "ma[de] no legal argument as to how the subpoenas would be burdensome"). Nor could it. Non-parties regularly represent themselves at depositions commanded by subpoena.

The motion further states Ms. Smithline would be "heavily prejudiced" were she to appear "unrepresented, or represented by counsel who has already filed a motion to withdraw form representing her." Dkt. 484-1 at 3. But there is no evidence of prejudice. Mr. Ellwanger's declaration does not speak to the prejudice,

---

[4] There are no other objections to the subpoena because Ms. Smithline never served any. FRCP 45(d)(2)(B); *Omnicare*, 2021 WL 4776695, at *2.

and there is no declaration by Ms. Smithline attached to the motion. *See Johnson v. United States,* 2018 WL 6136768, at *2 (C.D. Cal. July 10, 2018) (granting motion to compel compliance where non-party "has not submitted evidence" of claimed undue burden); *Miller*, 2019 WL 486175, at *1 (motion to quash denied where party provided no evidence of undue burden); *Briggs v. Am. Laser Centers of Vancouver, LLC*, 2007 WL 2116397, at *3 (W.D. Wash. July 19, 2007) (same).

      To the contrary, Ms. Smithline has attempted on multiple occasions to contact counsel for Warner *herself*. She has called, left voicemails, and sent emails—all apparently based on her belief that she already terminated her relationship with Mr. Ellwanger. Despite cautionary warnings that counsel could not speak to her if she was represented by counsel, she continued contact Mr. Warner's counsel, each time stating unequivocally that she had fired Mr. Ellwanger and disapproved of his representation. There is simply no evidence that Ms. Smithline wishes to proceed with litigation only if she obtains new counsel—let alone evidence that she will be prejudiced if she does not. Nor does the motion offer any evidence that Ms. Smithline, in fact, intends to retain new counsel were the 90-day continuance granted. Her conduct belies this suggestion (offered only by Mr. Ellwanger), and thus the request is nothing more than a tactic to delay.[5]

## V. CONCLUSION

      For the foregoing reasons, the motion to modify the subpoena should be denied.

/ / /

/ / /

---

[5] Needless to say, the circumstances of Mr. Ellwanger's dramatic departure from Ms. Smithline's litigation against Defendants—and his interference in allowing her deposition to proceed in this action—presents serious ethical questions given his continued representation of Plaintiff Bianco in this litigation where Ms. Smithline is a key witness.

| | | | |
|---|---|---|---|
| 1 | DATED: | September 1, 2022 | KING, HOLMES, PATERNO & SORIANO, LLP |

By:     */s/ Howard E. King*
                HOWARD E. KING
Attorneys for Defendant BRIAN WARNER

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

DATED: September 1, 2022    KING, HOLMES, PATERNO & SORIANO, LLP

By:     */s/ Howard E. King*
                HOWARD E. KING
Attorneys for Defendant BRIAN WARNER