UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESMÉ BIANCO,<br><br>                Plaintiff,<br><br>    v.<br><br>BRIAN WARNER, a/k/a MARILYN MANSON, *et al.*,<br><br>                Defendants. | Case No. 2:21-cv-03677-FLA (MARx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. 42]** |

# RULING

Before the court is Defendant Brian Warner's ("Warner," a/k/a Marilyn Manson or "Defendant") Motion to Dismiss the Fourth and Fifth Causes of Action in Plaintiff Esmé Bianco's ("Bianco" or "Plaintiff") Second Amended Complaint ("Motion"). Dkts. 42, 42-1 ("Mot. Br.").[1]  Plaintiff opposes the Motion.  Dkt. 43 ("Opp'n").

For the reasons stated below, the court GRANTS IN PART AND DENIES IN PART the Motion.  Plaintiff's fifth claim is dismissed with twenty (20) days' leave to amend.  The motion is otherwise DENIED.

# PROCEDURAL HISTORY

Plaintiff filed this action on April 30, 2021.  Dkt. 1.  On July 16, 2021, Plaintiff filed a Corrected First Amended Complaint ("FAC"), alleging claims for: (1) sexual assault, pursuant to Cal. Code Civ. Proc. § 340.16; (2) sexual battery, pursuant to Cal. Civ. Code § 1708.5 (erroneously identified as Cal. Code Civ. Proc. § 1708.5); and (3) violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589.  Dkt. 12 ¶¶ 33-43.  On July 28, 2021, Defendant moved to dismiss Plaintiff's first and second claims for sexual assault and sexual battery, arguing they were time-barred by the applicable statute of limitations.  Dkt. 14.  On October 7, 2021, the court denied Defendant's motion.  Dkt. 26.

On May 11, 2022, the court granted Plaintiff's request for leave to amend her FAC to add new allegations regarding Defendant's conduct that occurred after the filing of the FAC.  Dkt. 39.  On May 12, 2022, Plaintiff filed a Second Amended Complaint ("SAC"), adding fourth and fifth claims for tortious interference with contract and prospective economic benefit.  Dkt. 40 ("SAC") ¶¶ 51-63.  In the subject Motion, filed May 26, 2022, Defendant moves to dismiss Plaintiff's additional claims

---

[1] Defendant Marilyn Manson Records, Inc. ("MMR") did not join in bringing the subject Motion.  Accordingly, the court's references to "Defendant" in this Order shall be to Defendant Warner, alone.

pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). *See generally* Mot. Br.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "It is to be presumed that a cause lies outside [of federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be facial or factual. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." *Id.* The court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor in determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Id.* By contrast, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.

The burden of proof by a preponderance of evidence on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Leite*, 749 F.3d at 1121.

/ / /

/ / /

### a. 28 U.S.C. § 1367

A district court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367(a). A state law claim "is part of the same case or controversy when [1] it shares a 'common nucleus of operative fact' with the federal claims and [2] the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).

Where supplemental jurisdiction exists, a district court may still decline to exercise such jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

While the presence of any of the four factors authorizes the court to decline to exercise supplemental jurisdiction, the court's discretion "is informed by the ... values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997); *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1093 (C.D. Cal. 2011).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of the claims asserted in the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory." *Caltex*

*Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159. Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II. Analysis

### A. Rule 12(b)(1)

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, based on Plaintiff's TVPRA claim, and supplemental jurisdiction for all other related claims forming the "same case or controversy" pursuant to 28 U.S.C. § 1367.

Defendant asserts a Rule 12(b)(1) facial attack against Plaintiff's fourth and fifth claims, arguing the court lacks subject matter jurisdiction over these claims because they are not part of the same "case or controversy" that gives rise to Plaintiff's sexual

5

assault, sexual battery, and TVPRA forced labor claims.[2]  Mot. Br. at 3-6.  The court, therefore, accepts as true the factual allegations of Plaintiff's SAC for purposes of evaluating Defendant's challenge.  *See Leite*, 749 F.3d at 1121.

Specifically, Defendant argues there is no supplemental jurisdiction under 28 U.S.C. § 1367(a) because the additional tortious interference claims arise from entirely separate conduct alleged from Plaintiff's sexual assault, sexual battery, and TVPRA claims, and involve separate and distinct legal and factual issues, time-frames, witnesses, and evidence.  Mot. Br. at 1.  Defendant notes the "new claims concern alleged conduct in April 2022, [whereas] the existing claims arise from different alleged conduct in 2011 to 2013," and that "the new claims will involve evidence and testimony from third parties … who have nothing to do with the existing claims."  *Id.* at 5.  According to Defendant, "[n]one of the facts (or acts) underlying the tortious interference claims is 'necessary to establish (or is even alleged to establish) the assault, battery, or forced labor claims, and vice versa."  *Id.*  Defendant, thus, concludes the court cannot properly exercise supplemental jurisdiction over the fourth and fifth claims, because they do not arise from the same nucleus of operative facts as Plaintiff's TVPRA claim.  *Id.*

Plaintiff argues the new claims share the same nucleus of common fact as Plaintiff's existing claims because "retaliation occurred between the Parties involved in the instant litigation, occurred during the pendency of the instant litigation, and likely occurred because of the instant litigation."  Opp'n at 2 (emphasis omitted).[3]

---

[2] Defendant does not contest the court's supplemental jurisdiction over Plaintiff's sexual assault and sexual battery claims.  The court in its own review finds supplemental jurisdiction proper over the sexual assault and sexual battery causes of action as they stem from the same "case and controversy" as Plaintiff's federal TVPRA forced labor claim under 28 U.S.C. § 1367(a).

[3] Although the term "retaliation" does not appear in the SAC, it describes Defendant's conduct and use of power alleged throughout the SAC, including Defendant's alleged use of force, threats, intimidation, and coercion.  *See generally* SAC.

1 According to Plaintiff, "[a]fter Plaintiff finally found the strength to break free from
2 Defendant Warner's threats and abuse and bring claims against Defendant Warner, he
3 then continued his unlawful persecution of Plaintiff by tortiously interfering in her
4 new contract with the Deftones and making sure that Plaintiff would not be able to
5 profit in any way by this new relationship." *Id.* at 6.

6 After considering the parties' arguments and reviewing the SAC, the court finds
7 Plaintiff has met her burden to establish the court has supplemental jurisdiction over
8 the tortious interference claims. *See Leite*, 749 F.3d at 1121. Plaintiff's federal
9 TVPRA claim pertains to Defendant's conduct from 2011-2013, when he allegedly
10 induced Plaintiff to come to the United States by promising her work opportunities
11 due to his position as CEO of MMR and reputation within the entertainment industry.
12 SAC ¶¶ 11, 25-29. Once Plaintiff arrived in the United States, Warner allegedly
13 demanded unpaid labor and sexual acts by means of force and threats, and controlled
14 Plaintiff's conduct by physically confining her, restricting her communications, and
15 threatening to withdraw support if she displeased him. *Id.* ¶¶ 25-29, 47-50.

16 Specifically, Plaintiff alleges Warner engaged in physically and mentally
17 abusive conduct, including, inter alia, prohibiting her from leaving his apartment
18 without permission, forbidding her from receiving visitors, chasing Plaintiff around
19 his apartment with an ax, and cutting Plaintiff with a knife during sex, photographing
20 the cuts on her body, and posting the photos online—all without her consent. *Id.* ¶¶
21 20-22. According to Plaintiff, after she escaped from his apartment, Warner
22 "threatened to have her visa revoked and to 'punish' her when he next saw her," and
23 his threats had greater weight because of his power, influence, and connections in the
24 entertainment industry. *Id.* ¶¶ 11, 20, 25, 27.

25 Although Plaintiff's tortious interference claims involve conduct that allegedly
26 occurred in 2022, while her TVPRA claim involves conduct that allegedly occurred in
27 and around 2011, these claims share a common nucleus of operative fact –
28 Defendant's alleged use of his reputation, influence, and connections in the

7

entertainment industry to retaliate against Plaintiff and control her conduct. *See id.* ¶¶ 33-38, 51-63. As with her TVPRA claim, Plaintiff's tortious interference claims allege Warner used and continues to use his influence within the entertainment industry to interfere directly with her professional reputation and career opportunities, including by contacting the band Deftones and confronting them over their decision to work with Plaintiff. *Id.* ¶¶ 35-38.

Plaintiff's tortious interference and TVPRA claims involve a common nucleus of operative fact regarding Warner's intent and motive in his alleged conduct against Plaintiff. *See Travelers Indem. Co. of Conn. v. Pulte Grp.*, No. 2:18-cv-08994-JAK (JPRx), 2019 WL 1915760, at *11 (C.D. Cal. Apr. 26, 2019). Facts necessary to establish Defendant's liability under the TVPRA would also be part of a trial on Plaintiff's state law tortious interference claims; specifically, the circumstances regarding Defendant's prior relationship with Plaintiff and his alleged intent and motive. *See Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (holding federal and state claims derived from a common nucleus of operative fact, where facts necessary to establish defendant's liability under federal statute "would have been part of the trial on [the] state law [claim]"). Accordingly, the court finds Plaintiff's tortious interference claims would normally be tried together with her existing TVPRA claim. *See Bahrampour*, 356 F.3d at 978. The court, therefore, finds there is an overlap between the claims, such that they form "part of the same case or controversy." *See* 28 U.S.C. § 1367(a).

Next, Defendant argues the court may still decline to exercise such jurisdiction even if supplemental jurisdiction exists. *See* Mot. Br. at 6 n. 2 (citing 28 U.S.C. § 1367(c)). The court, however, finds that none of the grounds to decline supplemental jurisdiction set forth in 28 U.S.C. § 1367(c) are present here; therefore, there are no bases upon which the court should decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). Moreover, the exercise of supplemental jurisdiction will

promote the goals of judicial economy and efficiency, as all claims will be resolved in this single action. *See Acri*, 114 F.3d at 1001.

Accordingly, the court exercises supplemental jurisdiction over Plaintiff's fourth and fifth claims for tortious interference.

**B.     Rule 12(b)(6)**

In evaluating Plaintiff's SAC under Rule 12(b)(6), the court accepts as true the well-pleaded material facts and draws all reasonable inferences in favor of Plaintiff. *See Caltex*, 824 F.3d at 1159.

### 1.     Tortious Interference with Performance of a Contract

To state a claim for intentional interference with contractual relations, a plaintiff must plead: (1) a valid and existing contract with a third party; (2) the defendant had knowledge of the contract; (3) the defendant committed an intentional act designed to induce a breach or disrupt the contractual relationship; (4) actual breach or disruption of the contract relationship occurred; and (5) damages were suffered as a result. *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001) (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)).

Defendant argues Plaintiff has not sufficiently pleaded the first and second elements of her claim. Mot. Br. at 7-8. Defendant acknowledges Plaintiff pleads "Warner discovered Ms. Bianco's participation in the project for the Deftones," but argues that this allegation is conclusory and insufficient to allege facts showing Warner's knowledge of the contracts at issue. *Id.* at 8 (citing SAC ¶ 35). The court disagrees.

In the SAC, Plaintiff pleads she entered a contract with the musical group, Deftones, in April 2022, in which she agreed to provide images of herself to be used as part of the stage set for the band's current tour, in an exchange for significant public exposure, the opportunity to continue working with the creative director who oversaw the project, and resulting economic benefit. SAC ¶ 33. At the time of

9

Defendant's alleged interference, Plaintiff had already participated in a video shoot, provided images to the band, and received approval from the creative director to publicly post about the collaboration on social media. *Id.* ¶ 34. Plaintiff further alleges that "[s]oon after Ms. Bianco performed her end of the contract, Defendant Warner discovered Ms. Bianco's participation in the project for the Deftones," and "proceeded to contact the band to confront them over the decision to work with Plaintiff." *Id.* ¶ 35. This resulted in the band's refusal to work with Plaintiff, the breach of contract, and Plaintiff's economic loss. *Id.* ¶¶ 35-37.

In light of Defendant's alleged experience in the entertainment industry, these factual allegations are sufficient to establish that Defendant knew or should have known Plaintiff had entered into an agreement with the Deftones in connection with their worldwide tour. *See id.* ¶¶ 33-35. That Defendant may not have known specific details of Plaintiff's agreement with the Deftones is insufficient to establish that he was not aware that they had entered into an agreement. Plaintiff has sufficiently alleged the requisite elements "to state a cognizable legal theory," including the existence of a contract and Defendant's knowledge.[4] *Caltex Plastics, Inc.*, 824 F.3d at 1159. Defendant's argument, thus, fails.

### 2. Tortious Interference with Prospective Economic Advantage

To state a claim for intentional interference with prospective business or economic advantage, a plaintiff must plead: (1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) an intentional and independently wrongful act on the part of the

---

[4] The court notes Defendant does not appear to contest the sufficiency of the third, fourth, or fifth elements as alleged. *See* Mot. Br. at 6-8. The third element itself – that Defendant "committed an intentional act designed to induce a breach or disrupt the contract relationship" – supports both (1) the existence of a contract and (2) Defendant's knowledge of a contract. *See Sebastian Int'l, Inc.*, 162 F. Supp. 2d at 1203.

defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1116 (C.D. Cal. 2015); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (Cal. 2003). Further, an independently wrongful act "must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." *Korea Supply Co.*, 29 Cal. 4th at 1159 n. 11. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Reeves v. Hanon*, 33 Cal. 4th 1140, 1152 (2004).

Defendant argues Plaintiff has not sufficiently pleaded the first, second, and third elements to state a tortious interference with prospective economic relations claim. Mot. Br. at 8-11.

First, Defendant argues that Plaintiff fails to plead any facts to establish an "economic benefit," and that her allegations she expected to obtain "public exposure" and "the opportunity to continue working with the highly sought-after creative director who oversaw the project" do not constitute economic, as opposed to non-economic, benefits. *Id.* at 9 (citing SAC ¶ 33). The court disagrees.

As discussed, Plaintiff's SAC describes expected economic advantage through significant public exposure with the Deftones and the opportunity to work with the band's creative director. SAC ¶¶ 33-38. Considering Plaintiff's career in the entertainment industry, the probability of these resulting economic opportunities and benefits is not unfounded. *See Ebner*, 838 F.3d 958 at 963 ("Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'").

Second, Defendant contends the SAC fails to include any factual allegations from which it could be concluded that "but for defendant's interference," it was "reasonably probable" Plaintiff would have gained "significant public exposure" or "continu[ed] working with the … creative director." Mot. Br. at 9. Defendant also

argues Plaintiff has failed to plead Defendant had knowledge of any such "economic" relationship. The court disagrees.

As stated, Plaintiff pleads she performed her end of the contract with the Deftones "by participating in a video shoot for the band, thus providing images for the Deftones' use." SAC ¶ 34. Plaintiff further alleges she "received approval from the creative director to post about her collaboration with the Deftones on her Instagram story," on April 12, 2022. *Id.* According to Plaintiff, on April 14, 2022, the Deftones informed her they would not perform their end of the contract or use her images during their upcoming tour, after Defendant contacted the band and confronted them over their decision to work with Plaintiff. *Id.* ¶¶ 35-36. These allegations are sufficient to establish it was reasonably probable Plaintiff would have obtained the benefit of her prospective economic relationship but for Defendant's interference. Similarly, Plaintiff pleads sufficient facts to establish Defendant was aware of this expected economic benefit, given his experience and reputation in the entertainment industry, as well as his own attempts to "hire" her for projects in the past. *See id.* ¶¶ 11-29, 33-38, 59-63; Opp'n at 11-12.

Finally, Defendant argues Plaintiff fails to plead facts to establish an independently wrongful act by Defendant. Mot. Br. at 10. Defendant cites cases including *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1224 (2006), to argue that a plaintiff must plead that the conduct alleged to constitute the interference was independently wrongful for reasons other than that it interfered with a prospective economic advantage. Mot. Br. at 10-11.

Plaintiff responds she has pleaded sufficiently that Defendant "'used his power and influence in the entertainment industry' to induce the breach of contract by the Deftones." Opp'n at 13. According to Plaintiff, she "is unable to plead the exact words or actions used by Defendant Warner to interfere in the Second Amended Complaint because she is not at this time aware of what exactly was said," and will

establish this claim through evidence obtained in discovery. *Id.* at 14. The court agrees with Defendant.

Plaintiff does not plead any facts to establish Defendant engaged in any act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" or identify any legal measure or standard that was violated. *See Reeves v. Hanon*, 33 Cal. 4th at 1152. Plaintiff alleges only that Defendant used his "power and influence in the entertainment industry" to disrupt the relationship between her and the Deftones. SAC ¶¶ 35, 61. Consequently, Plaintiff has not sufficiently pleaded Defendant's conduct was independently wrongful for reasons other than that it interfered with her prospective economic advantage.

Plaintiff, therefore, fails to state a claim for tortious interference with prospective economic advantage.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss (Dkt. 42). Plaintiff's fifth claim is dismissed with twenty (20) days' leave to amend. The Motion is otherwise DENIED.

IT IS SO ORDERED.

Dated: December 12, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge